# Ridgway's Estate.

*Wills—Construction—Distribution of corpus on termination of trust— Division among grandchildren per stirpes or per capita.*

Testator gave an annuity to his widow, and after giving an equal share of income to each of his children and creating a survivorship in favor of the remaining children, as to the share of income enjoyed by any child dying without leaving issue, provided for distribution among his grandchildren upon the death of his children, as follows: ". . . and upon the further trust, that my said Executors and their Successors, after the decease of my said children, shall be and stand seized and possessed of all the rest, residue and remainder of my Estate, real and personal, subject to the payment of the Annuity to my said wife, for life, hereinbefore provided for; and the said trust to that end, to and for the only proper use, benefit and behoof of all and every, my grandchildren born and to be born, their heirs, executors, administrators and assigns forever, in equal shares; such grandchildren however to take only the shares his, her or their parent (being my child) would have taken had I hereby given and devised my said residuary estate, subject to the said Annuity to my said wife and the trust aforesaid respecting the same, to my said children, their heirs, executors, administrators and assigns, in equal shares, and both the parents of such grandchildren had died, it being my will, however, that no distribution shall be made among my grandchildren of the capital or principal of my said residuary Estate coming to them as aforesaid, until after the decease of my said wife, but that the interest and income thereof be paid to them by my said Executors until such decease." The widow died. On the death of each child his or her share of the *corpus* was awarded to the children of such child, if any. One of testator's children died without issue and his share of the income was paid to the survivors and survivor until the death of the last survivor. On the audit of the account of the trustee filed upon the death of such last survivor, the questions arose (1) whether there had been an indefinite gift of income to such last survivor, equivalent to an absolute gift, and (2) whether this share of *corpus* should be distributed among testator's grandchildren *per stirpes* or *per capita: Held,* that there was no such absolute gift of the *corpus* and that the share should be distributed among the grandchildren *per stirpes* and not *per capita.*

Exceptions to adjudication. O. C. Phila. Co., April T., 1887, No. 525.

The facts and the relevant provisions of the will appear from the opinion of the court *in banc* and from the following extract from the adjudication of THOMPSON, J., Auditing Judge:

"This trust arose under the will with codicils thereto of testator, who died March 7, 1887, whereby he gave the residue of his estate to the accountant, as trustee, to pay the net income to be derived therefrom (after the death of his widow, who died March 31, 1888) to and among his eight children in equal shares semi-annually during all the term of their respective lives, upon spendthrift and separate-use trusts; and upon the death of any of his said children without leaving a child or children him or her surviving, then 'the share and proportion of such child so dying, the said income shall be paid to

and divided among my surviving children equally, subject to all the terms, conditions and restrictions hereinbefore set forth in respect to the said income;' and upon this further trust, 'that my said executors and their successors, after the decease of my said children, shall be and stand seized and possessed of all the said rest, residue and remainder' 'to and for the only proper use, benefit and behoof of all and every, my grandchildren born and to be born, their heirs, executors, administrators and assigns forever, in equal shares; such grandchildren however to take only the shares his, her or their parent (being my child) would have taken, had I given and devised my said residuary estate' 'to my said children, their heirs, executors, administrators and assigns, in equal shares, and both the parents of such grandchildren had died;' distribution, however, not to be made until after the death of his wife; and after the decease of his wife, and in the event of the decease of any of his children leaving a child or children or issue of a deceased child or children, and from time to time as the same may occur, to set apart and allot such securities and real estate as may be the just and proper share and proportion of such, his grandchild or grandchildren or issue of a deceased grandchild or grandchildren in his said residuary estate, and execute all assignments, transfers and conveyances necessary to vest such securities and real estate in such grandchild or grandchildren or issue of deceased grandchild or grandchildren absolutely freed and discharged from the trusts under the will.

"Of testator's eight children, Caroline R. Macy had died in his lifetime, leaving four children, George H. Macy, Sarah Macy Marwick, Cornelia M. Harris and Eliza M. Jenkins.

"His daughter, Anna R. Miller, died Nov. 27, 1907, having had eight children, one of whom, Caroline Reese, died in her lifetime, and leaving surviving Susan R. Cannell, Daniel Leeds Miller, Horace W. Miller, Lucy Pancoast Smith, Rachel Biddle Raymond, Mrs. Lloyd Bickley and Anna Milton.

"After this, and the widow having died in 1888, two-eighths of the estate were distributed, one-half to the four children of Caroline R. Macy and the other half to the eight children of Anna R. Miller, the share of her deceased child, Caroline, being awarded to her executor (Ridgway's Estate, 18 Dist. R. 137).

"Then testator's daughter, Elizabeth R. Comly, died Dec. 30, 1909, leaving an only child, Mary K. Comly.

"His daughter, Sarah R. O'Rourke, died Jan. 30, 1914, without issue.

"His daughter, Susan R. Barker, died Dec. 31, 1915, leaving two children, T. Ridgway Barker and Rachel De Trampe.

"After the death of Elizabeth R. Comly, Sarah O'Rourke and Susan R. Barker, one-eighth of principal was awarded to the only child of Elizabeth R. Comly, one-eighth to the two children of Susan R. Barker, and one-eighth (exceptions thereto having been dismissed) to be held in trust for testator's then living children, Emma Comly, T. Edwin Ridgway and John J. Ridgway.

"Then testator's daughter, Emma R. Comly, died in 1918, leaving an only child, Emma R. Comly.

"His son, T. Edwin Ridgway, died Feb. 26, 1919, leaving an only child, Sarah Tonita Ridgway.

"His son, John J. Ridgway, died Aug. 15, 1924, leaving three children, Mabel R. Coward, Thomas Ridgway and Violet R. Jaeckel.

"After the death of Emma R. Comly, one-eighth was distributed to her only child, Emma R. Comly, and three-eighths continued in trust for testator's surviving children, T. Edwin Ridgway and John T. Ridgway.

"Upon the death of T. Edwin Ridgway, one-eighth was distributed to his only child, Sarah Tonita Ridgway, and two-eighths continued in trust for the last surviving child, John J. Ridgway.

"It is of this undivided two-eighths of testator's residuary estate, of the income from which John J. Ridgway received one-half under the original gift and the remaining half as successor to the income originally received by Sarah O'Rourke, that the present account is filed—the death of John J. Ridgway determining the trust.

"John J. Ridgway died Aug. 15, 1924, leaving him surviving three children, Mabel R. Coward, Thomas Ridgway and Violet R. Jaeckel, and no issue of deceased children, and leaving a will upon which letters testamentary issued to Thomas Ridgway, and whereby he gave his entire estate to his widow, Elizabeth F. Ridgway.

"The names of the grandchildren of testator still living and the names of those entitled to the estates of deceased grandchildren, are fully set forth in the petition for distribution.

"As to the principal producing the income to which John J. Ridgway was originally entitled there is no question; this is distributable among his three children, Mabel R. Coward, Thomas Ridgway and Violet R. Jaeckel, in equal shares.

"The remaining half of principal was claimed by Mr. Pepper, on behalf of Elizabeth F. Ridgway, widow and sole legatee under the will of John J. Ridgway, or his children. For the widow, on the ground that, as John J. Ridgway was at the time of his death entitled to the whole income therefrom with no gift over, he is also entitled to the *corpus* producing the income, upon the well-recognized principle that a gift of income without limitation of time and without gift over is a gift of principal; or, if not, then on behalf of his children, on the ground that principal is to go to the child or children only of whoever enjoyed the income; and it is claimed that the adoption of neither of these constructions would result in intestacy.

"On the other hand, conceding a possible construction resulting in intestacy, Mr. Wood, on behalf of other grandchildren of testator, claimed that under a proper construction of the will this share of principal vested in all the grandchildren of testator *per stirpes*.

"And Mr. Deeter claimed that if the contention prevailed that the gift of income carried the principal, the distribution should be among the children of Susan R. Barker, Emma R. Comly, T. Edwin Ridgway and John J. Ridgway, all of whom survived Mrs. O'Rourke, joining, however, in asking for the construction contended for by Mr. Wood.

"The principle that a gift of the usufruct, without limitation of time or gift over, carries the source of production is sustained by a long line of decisions from Hellman *v.* Hellman, 4 Rawle, 450, to Mifflin's Estate, 232 Pa. 25. But the applicability of the principle depends upon the terms of the will. Under the present will the original gift of shares of income to the children of testator is for life only, and the testator expressly provides that the income of a child dying without surviving child or children shall be paid to and divided among testator's surviving children equally, 'subject to all the terms, conditions and restrictions hereinbefore set forth in respect to the said income.' The testator made no distinction between surviving children as to the duration of their enjoyment of this income; and, under prior accounts of the O'Rourke income, this court, after the death of her sister and brother who had also survived Mrs. O'Rourke, gave the entire income to John alone. That

award was predicated upon the construction that the interest of surviving children therein was a life interest only.

"But it was argued that there is no gift over of the principal. However, in Schaaf v. Politowski, 276 Pa. 31, it is said by the Chief Justice: 'There is no devise over in the present will, but the testator distinctly provides that his wife's estate shall be limited to the 'term of her natural life.' In McCullough's Estate, 272 Pa. 509, 513, discussing the effect of the Act of 1833, we recently said: 'Though the absence of a gift of the remainder is some indication of a purpose to give to the first taker the estate in fee, yet the will . . . may disclose a contrary intention; this has been held . . . where the estate was expressly limited to [one for] life: Reynolds's Estate, 175 Pa. 257; Shaner v. Wilson, 207 Pa. 550.' '

"The Auditing Judge cannot, from the language of the will, find that the income enjoyed during life by a child who might die without issue was given either to testator's surviving children or last surviving child without limitation of time; nor that, even though there be no gift over of principal after the death of all testator's children, the principle contended for would apply. The contention that the will gave the principal only to the children of the child who finally enjoyed the whole income therefrom will be considered in the general discussion of the will.

"The scheme of testator's will is clear in this—that he intended to dispose of income and principal separately, independently the one of the other, and to dispose of each as an entirety.

"It will not be overlooked that the testator, subject to the annuity to his wife, gave each of his children, not the whole income of an equal share of principal, but an equal portion of the whole income of the estate, and the income only, and permitted distributions of principal whenever a child died leaving issue, only the distribution of principal producing income for a child who died without issue being postponed until the death of all his children.

"Under the gift over of the income of a child who died without issue to his surviving children, there arose by implication (Lippincott's Estate, 276 Pa. 283) a gift of the income of a child leaving issue to such issue, which, differing from the gift of additional income to surviving children, was without limitation of time, and would have carried the principal: Hellman v. Hellman, 4 Rawle, 450.

"This, however, is immaterial; for when the testator came specifically to dispose of principal, he disposed of it also as an entirety, by directing that the executors shall be and stand seized and possessed of all the said residue and remainder to and for the only proper use, benefit and behoof of all and every his grandchildren born and to be born in equal shares. Had he stopped here, there being grandchildren living at his death, neither intestacy nor the present question could arise, for it was held, under the construction of this will in Ridgway's Estate, 18 Dist. R. 137, that grandchildren took vested interests which were not divested by death prior to distribution.

"But the testator, after giving all his grandchildren an equal share in residue, immediately proceeds to define equality, as he understood the term, by providing 'such grandchildren however to take only the share his or their parent (being my child) would have taken, had I thereby given and devised my said residuary estate . . . to my said children, their heirs, executors, administrators and assigns, in equal shares, and both the parents of such grandchildren had died.' This, at least, clearly shows that he did not intend a *per capita*, but a stirpetal distribution.

Ridgway's Estate.

"This is conceded by counsel for both sets of claimants. Mr. Wood contended that this clause, being in the nature of a condition subsequent, and, therefore, to be strictly construed, was designed only to change the *per capita* distribution to a distribution *per stirpes*, and not to make the stock through which grandchildren were to take dependent on the accident that it enjoyed income beyond its own original share; while Mr. Pepper argued that testator thereby also intended to cut out all grandchildren who were not children of parents that shared in the income of a child who died without child or children. Indeed, he went so far as to contend that only the grandchildren whose parent enjoyed the whole of such income should be awarded the principal producing the share of income.

"In construing this will with reference to the nature of the interest a grandchild took, Judge Anderson, for this court, in Ridgway's Estate, 18 Dist. R. 137, said: 'That the clause giving the grandchildren the principal of the estate, standing alone, gave a vested interest, is admitted by the exceptants. They claim, however, that, taking the will as a whole, it shows that the testator did not so intend. It would take a very clear direction to divest a gift so plainly given as the one in this will. The testator expressly includes all the grandchildren, born and to be born, and gives it to them, their heirs, executors, administrators and assigns, and, while he does give the income over in the case of a child dying without leaving issue surviving, he makes no such gift of the principal.'

"Nor can the Auditing Judge find any intention, express or implied, to dispose, as a separate item, of the principal producing the income of a child who died without issue, and, therefore, no ground to award such principal only to grandchildren, child or children of a child or children who thereafter enjoyed such income. The gift of the whole principal is to all his grandchildren born and to be born, not proportioned to the income he had given to the parent, but proportioned to what 'his, her or their parent (being my child) would have taken had I thereby given and devised my said residuary estate . . . to my said children, . . . and both the parents of such grandchildren had died,' having in mind clearly, not all his children, but only such as contributed to the class that was to take, distribution being postponed merely to insure the enjoyment of its income by his children during the periods and in the proportions designated.

"Viewed in the light of the whole will, the Auditing Judge concludes that the intention of the testator as to principal was that if a child died leaving or having had child or children, such grandchildren should take principal proportioned to the parent's original share of income; if the child died leaving no child or children, still all his grandchildren were to take the income-producing principal, their shares to be what they would have taken had he given their parents such principal and the parents had died.

"Distribution of this share of principal will accordingly be made to all grandchildren *per stirpes.*"

*Thomas Ridgway,* for accountant.

*Theodore S. Paul* and *George Wharton Pepper,* for exceptions.

*Clement B. Wood* (of *Morgan, Lewis & Bockius*) and *Bell, Kendrick, Trinkle & Deeter,* contra.

HENDERSON, J., July 3, 1925.—Eliminating the annuity to the widow, who is dead, after giving an equal share of the income to each of his children, and creating a survivorship in favor of the remaining children, as to the share of

Ridgway's Estate.

income enjoyed by any child dying without leaving issue, the testator, upon the death of all of his children, provided as follows:

". . . and upon the further trust, that my said Executors and their Successors, after the decease of my said children, shall be and stand seized and possessed of all the rest, residue and remainder of my Estate, real and personal, subject to the payment of the Annuity to my said wife, for life, hereinbefore provided for; and the said trust to that end, to and for the only proper use, benefit and behoof of all and every, my grandchildren born and to be born, their heirs, executors, administrators and assigns forever, in equal shares; such grandchildren however to take only the shares his, her or their parent (being my child) would have taken had I hereby given and devised my said residuary estate, subject to the said Annuity to my said wife and the trust aforesaid respecting the same, to my said children, their heirs, executors, administrators and assigns, in equal shares, and both the parents of such grandchildren had died, it being my will, however, that no distribution shall be made among my grandchildren of the capital or principal of my said residuary Estate coming to them as aforesaid, until after the decease of my said wife, but that the interest and income thereof be paid to them by my said Executors until such decease."

Upon the death of each child, his or her share of the *corpus* was awarded to their respective children. One of the children of the testator died without issue and his share of the income has been paid to the survivors and survivor who is now deceased. The exceptions challenged the distribution of this share of the *corpus* to the grandchildren *per stirpes*, and contend there was an indefinite gift of the income of the share of the child dying without issue to the last child to survive, and, hence, by the well-known rule, this is equivalent to an absolute gift.

The language of the will is not as clear as it might be, but we are of opinion that the testator's intent may readily be gathered. Had he not provided that, upon the death of his children, his "executors . . . shall be and stand seized and possessed of" his estate ". . . to and for the only proper use and behoof of all and every, my grandchildren born and to be born, their heirs, executors, administrators and assigns forever, in equal shares, . . ." greater difficulty would have been presented.

The next clause of the will is not so clear—"such grandchildren however to take only the shares his, her or their parent (being my child) would have taken had I hereby given and devised my said residuary estate . . . to my said children . . . in equal shares, and both the parents of such grandchildren had died. . . ."

The intent of this clause is undoubtedly to direct that the division among the grandchildren shall be by *stirps*. When the testator said "had I given my residuary estate to my said children," he intended thereby as if he had said "to my said children leaving children to survive." This is made clear by the other phrase in the will, "and both parents of such grandchildren had died." The intent of the will would then be that he gave his residuary estate to his grandchildren, they taking such shares as would accrue to them had he given his residuary estate to his children leaving children to survive.

We are of opinion that the intent of the will is reasonably free from doubt, notwithstanding the able presentation made on behalf of the exceptants.

The exceptions are dismissed and the adjudication is confirmed absolutely.